| NOTICE |
| --- |
| This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1). |

2026 IL App (4th) 260124-U

NO. 4-26-0124

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 11, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
| --- | --- | --- |
| *In re* MARRIAGE OF AMY L. WILSON, | ) | Appeal from the |
|      Petitioner-Appellant, | ) | Circuit Court of |
|      and | ) | Tazewell County |
| MICHAEL T. WILSON, | ) | No. 19D311 |
|      Respondent-Appellee. | ) | |
| | ) | Honorable |
| | ) | John M. Spears, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Knecht and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court (1) reversed the trial court's order denying petitioner's petition for a rule to show cause why respondent should not be held in contempt of court for his refusal to pay, per the parties' agreement, his share of the expenses associated with buying a car for the parties' oldest son and (2) remanded the case for the court to enter (a) a sanction and purge order and (b) our modified judgment awarding petitioner all of the attorney fees she incurred in bringing the contempt action.

¶ 2    In October 2019, petitioner, Amy L. Wilson, petitioned to dissolve her marriage to respondent, Michael T. Wilson. An agreed order dissolving the marriage was subsequently entered and incorporated into that agreed order was the parties' marriage settlement agreement (MSA). Thereafter, the parties entered into an agreed order modifying the MSA. That agreed order provided for, among other things, dividing expenses incurred for purchasing, insuring, and maintaining cars for the parties' three children.

¶ 3    Over four years after the marriage was dissolved, petitioner filed a petition for

rule to show cause, which she subsequently amended. In the amended petition, she claimed respondent should be held in indirect civil contempt of court because, among other reasons, he refused to pay his share of a car she purchased for the parties' oldest son, who had turned 16 years old. In both the original and amended petitions, which were brought by her attorney, she asked for attorney fees.

¶ 4 Following a hearing, the trial court did not find respondent in contempt for refusing to pay his share of costs for the car. Accordingly, the court did not award petitioner attorney fees related to that claim. Petitioner appeals the order, arguing the court should have (1) held respondent in contempt for failing to pay his portion of the expenses for the car and (2) awarded her attorney fees on that claim. We agree.

¶ 5 I. BACKGROUND

¶ 6 The MSA incorporated into the agreed order dissolving the parties' marriage covered various financial terms, including child support. Under the section addressing child support was paragraph 8.3, which stated the following:

> "The parties shall equally share (50/50) all educational related fees and expenses, extracurricular activity expenses (including uniforms, costumes, equipment and the like), daycare, latchkey and summer care/summer camp, and uncovered medical expenses for the parties' minor children. As to extracurricular activity expenses, said contributions to expenses shall be limited to those expenses/fees for items that are necessary for the participation in the activity. A list of necessary fees/expense[s]/items shall be produced to both parties. The parties shall further attempt to make their respective portions of any expenses incurred directly to the provider or vendor whenever possible. As to daycare, latchkey and summer

care/summer camp, the parties shall equally share said expenses when both parties are working. Nonetheless, any party incurring an expense shall provide proof of payment or receipt of such expense to the other party via attachment in the Our Family Wizard App within thirty (30) days of payment and the other party shall then have thirty (30) days to reimburse the incurring party their one-half share."

Petitioner, her attorney, respondent, and his attorney signed the MSA. (The "list of necessary fees/expense[s]/items" that were "produced to both parties" is not included in the record.)

¶ 7 Seven months later, the parties entered an agreed order modifying, among other things, expenses related to child support. When the agreed order was entered, petitioner was represented by counsel, and respondent proceeded *pro se*. Paragraph 5 of the agreed order provided the following:

"The parties agree that Respondent shall be responsible for sixty percent (60%) of all out of pocket expenses incurred on behalf of the minor children, and [Petitioner] shall be responsible for forty percent (40%) of all out of pocket expenses incurred on behalf of the minor children. Said out of pocket expenses are thoroughly defined in the parties' [MSA], section 8.3. In addition to those expenses, the parties agree to divide per the 60/40 split, school supplies for the children, cell phone expenses for the children, school lunches for the children, vehicles, vehicle insurance and vehicle repairs for the children. Unless otherwise agreed between the parties in writing, each party shall contribute $200 per child, per year, towards clothing, shoes, coats, etc., but not to include clothing or shoes as related to extracurricular activity expenses, as said contribution is defined in the [MSA]."

Petitioner, her attorney, respondent, and the trial court signed this agreed order.

¶ 8        Over three years later, petitioner filed a petition for a rule to show cause why respondent should not be held in contempt of court for failing to pay his share of the children's daycare, summer camps, extracurricular activities, and other general and/or school expenses. Petitioner, who was represented by counsel, asked for "[a]n award of fees incurred *** [in] bring[ing] this action."

¶ 9        Almost three weeks after the contempt petition was filed, petitioner filed an amended petition, adding respondent should be held in contempt for failing to pay his portion of a car she bought for the parties' oldest son, who had turned 16 years old. Petitioner alleged that before she bought the car, she told respondent she was looking for one for the son. Respondent did not believe the son needed a car. Three months after petitioner told respondent about buying a car, she purchased a 2004 Kia Optima, which cost, with tax, title, and licensing fees, $8,428. Petitioner alleged respondent's portion of the costs totaled $5,920. Petitioner alleged that this amount, plus the amounts respondent did not pay for the children's daycare, summer camps, extracurricular activities, and other general and/or school expenses, totaled $9,024.01. Petitioner, who was represented by counsel when the amended petition was filed, asked for "[a]n award of attorney fees incurred *** [in] bring[ing] this action."

¶ 10        Attached to the amended petition were (1) spreadsheets of the children's expenses, with the amounts respondent paid and the amounts he did not, and (2) screenshots of text conversations the parties had about buying a car for the parties' oldest son. In the first text message, which was sent right before the parties' oldest son turned 16, petitioner told respondent she had started looking for a car for their son, reminded respondent their agreement provided they would split the costs, and asked respondent if there was an amount he would be comfortable

paying.

¶ 11 Respondent, who was unemployed at the time, replied two days later, texting petitioner he would get back to her. Respondent followed up seven days later, telling petitioner she could start looking, but he did not believe the son needed a car until he obtained employment or "has a bigger purpose of having a vehicle." Respondent explained he could take the son everywhere he needed to be. Despite that, respondent asserted, "I will need to look at the used car going rates to determine what I will be comfortable with."

¶ 12 The next day, petitioner texted respondent, stating, "This is exactly the opposite of what is necessary." She told respondent the son could not find a job without reliable transportation, noting the parties' other two children were involved in activities which could impact their ability to take the son where he needed to go. Petitioner told respondent she was looking at cars and believed they could find a four- to six-year-old car, with lower maintenance and insurance costs, for between $8,000 and $10,000. Petitioner then reminded respondent about their agreement to split the car expenses 60/40. Petitioner told respondent that, given his current unemployment, they could arrange for him to make payments to cover his share of the costs associated with buying a car for their oldest son.

¶ 13 Petitioner's attorney filed an affidavit attesting that she incurred $3,292.50 in fees in bringing the contempt petitions. This amount was based on counsel's fees of $325 per hour spent outside of court and $350 per hour for time spent in court.

¶ 14 Respondent filed a response to petitioner's amended petition. He alleged that, under the MSA and agreed order, a car for the parties' oldest son was neither required nor necessary. He alleged petitioner could not unilaterally proceed in buying a car and then force him to pay a portion of it when he objected to its purchase. Regarding the other allegations,

respondent asserted he was not in arrears.

¶ 15    At a hearing, petitioner testified she started talking to respondent about buying a car for the parties' oldest son around the time the son—who had a job, good grades, and played golf and baseball—turned 16 years old. At that time, respondent told petitioner he would not contribute to the car's purchase. Petitioner told respondent he could pay his share of the car in monthly installments, but to date, respondent had not paid any amount for the car, insurance, or repairs. When asked whether the son was required to have a car, petitioner responded, "Is anyone required to have a car? The answer is no. Not everyone is required to have a car at any point in time as an adult, as a 16-year-old, as a 33-year-old. No—nowhere does it say that a person is required to have a car."

¶ 16    Respondent, who remarried 17 months after the parties' marriage was dissolved, testified that he was unemployed from June to November 2024. He received unemployment benefits and a "nominal settlement" during this time. Before he was unemployed, he worked at Caterpillar, making $124,000 per year, and then Nike, making $148,000 per year, excluding bonuses. After his five months of unemployment ended, respondent worked at Maersk, making $123,000 per year, excluding bonuses. Respondent stated his current wife contributed to his household income, making $58,000 per year. When asked, "You don't think you owe [petitioner] anything for the vehicle?" respondent replied, "That's correct."

¶ 17    The trial court (1) found respondent in contempt for failing to pay his share of the children's daycare, summer camps, extracurricular activities, and general and/or school expenses and (2) entered a sanction and purge order on those issues. The court did not hold respondent in contempt for refusing to pay anything toward the car for the parties' 16-year-old son. Regarding the car, the court found, according to petitioner's spreadsheet, the monthly expenses for the

parties' children were consistent. It stated, "By contrast, the Petitioner now seeks $5,056.80 for the purchase of the Optima and $863.54 for insurance." The court found "[t]hese amounts represent a significant departure from the established monthly expense totals." Although the court recognized paragraph 5 of the agreed order addressed cars for the children, it found "[paragraph 5] does not define a clear standard for determining whether an expense is appropriate." Thus, "[i]n the absence of any dispute-resolution mechanism concerning such expenses, the court look[ed] to paragraph 8.3 of the parties' [MSA], which provides that, '[a]s to extracurricular activity expenses, said contributions to expenses shall be limited to those expenses/fees for items that are necessary for the participation in the activity.' " The court found there was no evidence presented the car was connected to extracurricular activities or otherwise necessary.

¶ 18        Given the trial court's ruling, respondent was ordered to pay petitioner's attorney fees incurred in bringing some, but not all, of the claims in the contempt proceedings. The amount respondent was ordered to pay was $1,646.25, which was half of the $3,292.50 in fees for which petitioner's attorney asked.

¶ 19        Within 30 days, petitioner filed a motion to reconsider, claiming the trial court erred in interpreting the parties' agreed order modifying the MSA. Petitioner argued the purchase of a car was independent of extracurricular activities and not contingent on necessity. Moreover, petitioner contended the agreed order clearly amended and expanded the scope of shared expenses to include, among other things, the purchase of cars for the parties' children. Petitioner then asserted the court erred in not awarding her all of the attorney fees she requested.

¶ 20        The trial court denied petitioner's motion to reconsider, noting, in its opinion, any duty to support is required to be reasonable and necessary. Regarding the car, the court

considered the fact petitioner indicated no one needed a car and found that, although it was "not super expensive" and "fit the needs of a 16-year-old child," there was no evidence presented that the oldest son needed the car for work. Thus, purchasing the car for the son was not necessary. The court found, if it ruled the other way, petitioner could buy an expensive car for the son and then force respondent to pay 60% of it, which could make the MSA unconscionable. Concerning attorney fees, the court found that although the fees petitioner's attorney charged were reasonable and necessary, it did not hold respondent in contempt for not paying a portion of the car expenses. Thus, it would not hold respondent liable for all of petitioner's attorney fees. The court stated it used its discretion in determining what portion of petitioner's attorney fees respondent had to pay.

¶ 21        Thirty days after the trial court denied petitioner's motion to reconsider, petitioner filed a notice of appeal. See Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017). Thirty-one days later, a day after petitioner filed her notice of appeal, respondent filed a motion to recalculate or modify child support. We find this motion does not impact our jurisdiction. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994) (providing an appeal from a final judgment in a civil case is "initiated by filing a notice of appeal," and "[n]o other step is jurisdictional"); Ill. S. Ct. R. 303(a)(1) (July 1, 2017) (noting that only *timely* filed posttrial motions, those filed within 30 days of the final judgment, affect the time in which a notice of appeal from a final judgment must be filed).

¶ 22        This appeal followed.

¶ 23                                II. ANALYSIS

¶ 24        At issue on appeal is whether the trial court erred in (1) not finding respondent in contempt of court for refusing to pay his portion of the expenses petitioner incurred in buying a car for the parties' 16-year-old son and (2) declining to award petitioner the attorney fees she

- 8 -

asked for in bringing the contempt petition claim regarding the car. We consider each issue in turn.

¶ 25                                A. Lack of an Appellee's Brief

¶ 26        Before addressing the merits, we note respondent, the appellee, has not filed a brief in this appeal. Accordingly, we must review petitioner's arguments on appeal pursuant to *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128 (1976). In *Talandis*, our supreme court held that, when no appellee's brief has been filed, a reviewing court cannot reverse the trial court's judgment *pro forma*. *Id.* at 131. Rather, the reviewing court has three distinct, discretionary options:

> "(1) it may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." *Thomas v. Koe*, 395 Ill. App. 3d 570, 577 (2009).

See *Talandis*, 63 Ill. 2d at 133.

¶ 27        Here, we will reverse the trial court if the brief of the appellant, *i.e.*, petitioner, demonstrates *prima facie* reversible error. " '*Prima facie*' means, '[a]t first sight; on first appearance but subject to further evidence or information' and '[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted.' " *Thomas*, 395 Ill. App. 3d at 577 (quoting Black's Law Dictionary 1228 (8th ed. 2004)). With this in mind, we now address the merits.

¶ 28                                B. The Merits

¶ 29                                1. *Car Expenses*

¶ 30 The first issue we consider is whether the trial court erred when it did not find respondent in contempt for refusing to pay his portion of the expenses petitioner incurred when she bought a car for the parties' 16-year-old son. In addressing that issue, we must first examine the MSA and the agreed order, as the trial court declined to find respondent in contempt based on its reading of paragraph 5 of the agreed order, which it found incorporated terms from paragraph 8.3 of the MSA.

¶ 31 a. Interpreting the MSA and the Agreed Order

¶ 32 Both the MSA and agreed order are construed under the rules governing the interpretation of contracts. *In re Marriage of Tutor*, 2011 IL App (2d) 100187, ¶ 13; *In re Marriage of Doermer*, 2011 IL App (1st) 101567, ¶ 27. In interpreting a contract, we aim to give effect to the parties' intent. *In re Marriage of Woodrum*, 2018 IL App (3d) 170369, ¶ 108. Intent is best discerned from the contract's language, which should be given its plain and ordinary meaning. *Id.* "Contracts which specifically incorporate other documents by reference are to be construed as a whole with those other documents." *Kirschenbaum v. Northwestern University*, 312 Ill. App. 3d 1017, 1029 (1999). Each word must be given effect so that no word is rendered superfluous. *Vision Energy, LLC v. Smith*, 2025 IL App (3d) 240114, ¶ 61. We review *de novo* the interpretation of a contract. See *In re Marriage of Dynako*, 2021 IL 126835, ¶ 15.

¶ 33 Here, paragraph 8.3 of the MSA provides that the parties will share equally in paying for various expenses the children incur. It clarifies that, "*[a]s to extracurricular activity expenses*, said contributions to expenses shall be limited to those expenses/fees for items that are *necessary* for the participation in the activity." (Emphases added.) No other expenses delineated in paragraph 8.3, such as summer camps, daycare, or medical expenses, are subject to this "necessary" prerequisite needed to trigger the parties' obligation to pay their respective share.

¶ 34        Paragraph 5 of the agreed order amends paragraph 8.3 of the MSA in that, instead of the parties equally dividing various fees and expenses the children incur, the parties determined in the agreed order the costs would be divided so that respondent covered 60% of them, while petitioner paid the remaining 40%. Paragraph 5 specifically states the "out of pocket expenses are thoroughly defined in [paragraph 8.3 of] the parties' [MSA]." Immediately after this clause, the agreed order provides that "*[i]n addition to those expenses*, the parties agree to divide per the 60/40 split" various other expenses not mentioned previously in the MSA. (Emphasis added.) Those other expenses include "vehicles, vehicle insurance, and vehicle repairs for the children." Nowhere in the agreed order do the parties equate cars for the children with "extracurricular activity expenses" or otherwise indicate their obligation to buy a car arises only if the car is necessary. Rather, buying cars for the children is like the summer camps, daycare, and medical expenses mentioned in paragraph 8.3 of the MSA; no "necessary" determination must be made before the parties' obligation to cover the costs arises. In our view, as petitioner suggests, the trial court read the "necessary" requirement into the agreed order provision addressing cars for the children, which is something it simply could not do. See *Thompson v. Gordon*, 241 Ill. 2d 428, 449 (2011) ("[A] court cannot alter, change or modify existing terms of a contract, or add new terms or conditions to which the parties do not appear to have assented.").

¶ 35        We also note the increase in monthly costs respondent would have to pay if he was required to pay a portion of the expenses for the car, and petitioner's statement at the hearing that no one is required to have a car, are irrelevant here. What matters in this case is what the MSA and agreed order modifying the MSA provided. As indicated above, they unequivocally state, as relevant now, respondent is required to pay his share of the costs associated with buying a car for the parties' oldest son.

¶ 36        *In re Marriage of Roth*, 99 Ill. App. 3d 679 (1981), which petitioner cites, supports our conclusion that the trial court erred in finding the agreed order did not require respondent to pay his share of the costs of a car for the parties' 16-year-old son. In *Roth*, incorporated into the judgment dissolving the parties' marriage was a property settlement agreement. *Id.* at 681. The agreement provided that the father " 'will pay for a Bar Mitzvah or Confirmation celebration and party for each of the three children of the parties.' " *Id.* at 683-84. Nowhere in the agreement was there a limitation on the cost of such a party. *Id.* at 684. Thereafter, the mother paid for the parties' oldest son's bar mitzvah, which cost $4,850. *Id.* Instead of paying the entire amount, the husband contributed only $2,500. *Id.* The trial court found this payment satisfied the father's obligation and set $1,600 as the most the father would have to pay for the other children's bar mitzvahs or confirmations. *Id.*

¶ 37        The appellate court found "the trial court had no authority to limit the amount of [the father's] contribution." *Id.* In reaching that conclusion, the court noted the agreement unambiguously stated the father would pay for a party. *Id.* Once that agreement was made part of the divorce decree, its terms could not be modified in the absence of fraud, coercion, or a violation of public policy. *Id.* Although the court agreed "reasonableness" was implicit in the parties' agreement, nothing indicated the bar mitzvah for the parties' oldest son was unreasonably extravagant or expensive given the father's income and standard of living. *Id.*

¶ 38        Here, as in *Roth*, the agreed order unambiguously stated respondent would cover 60% of the costs associated with buying cars for the parties' children. Nothing in the agreed order or MSA limited the circumstances under which respondent was required to pay a share of those costs. Thus, the trial court had no authority to restrict when respondent's obligation to pay for a car arose. Moreover, in addition to noting the car fit the needs of a 16-year-old child, the

court found the car was not expensive, and like in *Roth*, nothing indicates the almost $6,000 cost of the Kia Optima and insurance was unreasonable given respondent's sizeable income and lack of any evidence he lived a lavish lifestyle. See *In re Marriage of Schmidt*, 292 Ill. App. 3d 229, 234, 237 (1997) (finding that while the father agreed he was responsible for paying half of the college expenses the parties' daughter incurred, an implied term of that agreement was that the costs had to be reasonable, and the evidence revealed the father could not afford to pay half of the college expenses the daughter would incur if she attended her dream out-of-state school, which did not offer the daughter anything more than what a state school could provide).

¶ 39        Although the trial court here found the agreement could be unconscionable if petitioner purchased an expensive car and then expected reimbursement from respondent, it seems the court overlooked the fact petitioner, too, would suffer large out-of-pocket expenses if she did that. For example, if petitioner bought a $50,000 car for the parties' oldest son, she would have to cover $20,000 of the purchase price. Because petitioner would also be financially responsible for a large amount under that scenario, we believe the agreement is not unconscionable. See *In re Marriage of Smith*, 164 Ill. App. 3d 1011, 1017 (1987) ("Unconscionable terms are *** defined as improvident, totally one-sided and oppressive.").

¶ 40        In sum, we find petitioner established *prima facie* reversible error where the trial court construed the MSA and agreed order so that respondent was only required to pay for a car and related expenses for the parties' oldest son if such costs were necessary. Given our finding, we turn next to whether respondent's failure to pay was contemptuous.

¶ 41                                  b. Contempt

¶ 42                                  i. *Willfulness*

¶ 43        A court is vested with the inherent power to enforce its orders (*Smithberg v.*

- 13 -

*Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000)), and this includes the power to enforce agreed orders (see, *e.g.*, *Village of Lakemoor v. First Bank of Oak Park*, 136 Ill. App. 3d 35, 41-42 (1985) (finding that trial court had the power to order compliance with an agreed order)). " 'The power to enforce an order to pay money through contempt is limited to cases of wilful refusal to obey the *** order.' " *In re Marriage of Barile*, 385 Ill. App. 3d 752, 758 (2008) (quoting *In re Marriage of Logston*, 103 Ill. 2d 266, 285 (1984)). "Once the party bringing the contempt petition establishes a *prima facie* case, the burden shifts to the alleged contemnor to prove that the failure to [pay] was not willful or contumacious and that there exists a valid excuse for his failure to pay." *Id.* at 759.

¶ 44        " '[W]hether a party is guilty of contempt is a question of fact for the trial court, and *** a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion.' " *Id.* (quoting *Logston*, 103 Ill. 2d 286-87). "A [finding] is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on the evidence." *In re Marriage of Slesser*, 2019 IL App (2d) 180505, ¶ 24. "A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 848 (2010).

¶ 45        Based upon our review of the record, we conclude that the trial court's denial of petitioner's amended petition, seeking to find respondent in indirect civil contempt for refusing to pay his share of the expenses incurred in buying the car for the parties' oldest son, was against the manifest weight of the evidence and reflected an abuse of discretion. First, petitioner established the court's interpretation of the MSA and agreed order, finding respondent's

- 14 -

obligation to pay his share of expenses for a car arose only if a car was necessary, was an abuse of discretion and unreasonable. See *In re Marriage of Schurtz*, 382 Ill. App. 3d 1123, 1127 (2008). Second, petitioner satisfied her evidentiary burden by proving by a preponderance of the evidence respondent violated the terms of the agreed order concerning a car. Her evidence indicated she reminded respondent, before buying a car, that they had agreed to share the expenses associated with purchasing, insuring, and maintaining a car for the parties' oldest son. Although respondent indicated he would research what he could afford to pay, he ultimately decided he was not going to pay anything. As a result, respondent never contributed to the car expenses. Third, respondent failed to rebut petitioner's *prima facie* case and admitted he refused to pay any expenses associated with the car. That refusal, in and of itself, is willful and, thus, contemptuous. See *Welch v. City of Evanston*, 181 Ill. App. 3d 49, 55 (1989) (finding admission to refusing to obey the order was intentional and knowing, which, by definition, constitutes willful conduct for purposes of contempt).

¶ 46   In reaching this conclusion, we note that the mere fact the trial court agreed with respondent's interpretation of the MSA and agreed order does not warrant a different result. In *In re Marriage of Charous*, 368 Ill. App. 3d 99, 106, 111 (2006), the trial court, instead of interpreting the parties' parenting agreement in deciding whether the mother should be held in contempt for interfering with the children visiting their father, considered the fact the children did not like seeing their father and found both the mother and father were " 'bad parents.' " On those facts, the court asked, " 'Does it rise to the level of *** being able to hold [the mother] in contempt, no.' " *Id.* at 106. On appeal, the reviewing court interpreted the parties' parenting agreement and found, in light of what the agreement said, the mother should have been held in contempt of court for violating the terms of the parenting agreement. *Id.* at 108-09.

¶ 47        Here, like in *Charous*, the trial court relied on its own beliefs, *i.e.*, its opinion

respondent had to cover expenses for a car for his oldest son only if it was necessary, to conclude

respondent did not have to pay. That, as in *Charous*, was improper and does not prevent us from

deciding, based on the express terms of the MSA and agreed order, whether respondent's refusal

to pay was willful.

¶ 48        In summation, we find petitioner established *prima facie* reversible error where

respondent (1) willfully refused to pay his portion of the costs associated with purchasing a car

for the parties' oldest son and (2) should be held in indirect civil contempt. Given this

conclusion, we find it necessary to address a sanction and purge order.

¶ 49                        ii. *Sanction and Purge Order*

¶ 50        "Civil contempt is remedial in nature, intended to benefit the complainant by

coercing obedience with a court order." *Door Properties, LLC v. Nahlawi*, 2023 IL App (1st)

230012, ¶ 30. "Because of its coercive purpose, the sanction or penalty must be designed to

compel future compliance with the court's commands." *Id.*

¶ 51        "The ability of the contemnor to 'purge' the contempt through compliance with

the underlying court order is thus an indispensable ingredient of any civil contempt." *Id.* ¶ 31.

Thus, "[a] valid contempt order must contain a purge provision, which lifts the sanction when the

contemnor complies with the order." (Internal quotation marks omitted.) *Id.* "A civil contempt

order that fails to provide the contemnor with the keys to his cell is void." (Internal quotation

marks omitted.) *Id.*

¶ 52        Obviously, here, no sanction and purge order was entered on the issue related to

the car, as the trial court did not hold respondent in contempt on that point. Thus, we must

remand this case so that the court can enter a sanction and purge order, providing respondent

time in which to pay his share of the costs for buying, insuring, and maintaining the car petitioner purchased for the parties' oldest son. See *Charous*, 368 Ill. App. 3d at 113 (after reversing the trial court's order not finding the mother in contempt, the appellate court "remand[ed] the case to the trial court for the entry of a finding that [the mother] is in indirect civil contempt of court and for further proceedings to determine appropriate sanctions and other relief").

¶ 53                                    2. *Attorney Fees*

¶ 54         We now address whether the trial court erred in not awarding petitioner attorney fees in bringing the contempt petition claim concerning the car. Petitioner argues she is entitled to attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508(b) (West 2024)), which provides, in relevant part, as follows:

> "In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party."

¶ 55         "Under section 508(b) of the Act, the trial court has no discretion as to whether to award reasonable attorney fees and costs incurred in enforcement of its orders." *In re Marriage of Irvine*, 215 Ill. App. 3d 629, 635 (1991). The court's "only discretion is to decide whether the failure to pay was without cause or justification." *Id.* "If the trial court so finds, the award of reasonable attorney fees and costs is mandatory." *Id.* If the court fails to make such a determination, we may award attorney fees if the evidence presented at the hearing on a contempt petition establishes that the alleged contemnor's failure to comply with the provisions

of an agreed order was without compelling cause or justification. *Charous*, 368 Ill. App. 3d at 114-15.

¶ 56　　　　Here, the trial court found the fees petitioner's attorney incurred were reasonable and necessary. The court did not award petitioner all the attorney fees she asked for only because it did not find respondent in contempt on the issue regarding the car. That finding, as detailed above, was made in error, as respondent decided, in contrast to the agreed order's unambiguous terms, he did not have to pay his share of the costs of a car for his oldest son only because he believed the son did not need a car. Given our conclusion that respondent should have been held in contempt for failing to pay his share of the costs associated with buying the car, we determine petitioner is entitled to $3,292.50 in attorney fees, which are all the fees she asked for. Thus, pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we modify the judgment to reflect an award of $3,292.50 in attorney fees to petitioner.

¶ 57　　　　In sum, we find petitioner established *prima facie* reversible error as to (1) the construction of the MSA and agreed order and (2) the trial court not (a) holding respondent in contempt and (b) ordering respondent to pay all of petitioner's attorney fees. Accordingly, we (1) reverse the trial court's order not finding respondent in contempt, (2) modify the attorney fees awarded to petitioner, and (3) remand this cause for the trial court to enter (a) our modified judgment awarding petitioner all of the attorney fees she incurred and (b) a sanction and purge order regarding respondent not paying his share of the expenses associated with buying, insuring, and maintaining a car for the parties' oldest son.

¶ 58　　　　　　　　　　　　　　III. CONCLUSION

¶ 59　　　　For the reasons stated, we reverse and modify the trial court's judgment and remand for further proceedings consistent with this order.

¶ 60            Reversed and modified; cause remanded with directions.